# Spangler *versus* Springer.

1. A prior agreement *under seal* may be referred to by a subsequent *parol* agreement, and made part of it, so that both shall form but one parol agreement, and *assumpsit* be maintained.

2. If the parol modification of the covenant be in such of the *plaintiff's* stipulations as were conditions precedent to the action, he would be bound to sue *in covenant;* but where it is a modification of the defendant's covenant on which he is called to respond, *assumpsit* is the remedy; and in such an action, brought upon both instruments as one entire parol agreement, both were competent evidence.

3. In an agreement under seal, the plaintiff agreed to manage a coal business, and the defendant agreed to compensate him in proportion to the business done, it being agreed that the contract should continue three years if the parties so long agree, but that either party may terminate it by giving reasonable notice. In a subsequent agreement signed by the defendant alone, but *not under seal*, it was agreed that if the compensation fell short of $1500 in any year, the defendant was to make up the deficiency at the end of the year:

*Held*, that the forbearance of the plaintiff to assert his right to terminate the connection, and his continuance in service under the parol agreement, was sufficient consideration to support the parol agreement and to enable the plaintiff to recover at the rate of $1500 per annum.

4. An account made by one of the parties against the other, is not *an account stated* between the parties; and the mere retention by the plaintiff of such an account without objection, is but slight evidence of its correctness in charging him with money paid on his account by the defendant to another, or with a balance of money due to the defendant by such third person. Such account was by no means conclusive against the plaintiff.

5. An alleged variance between *the allegata* and *probata* is not a ground of reversal where no point as to it was made in the Court below, where an amendment could have been made.

ERROR to the District Court, *Philadelphia.*

This was an action of trespass on the case, brought by John B. Springer *v.* Christian E. Spangler.

A *narr.* was filed alleging a special parol contract, and setting out breaches thereof, and claiming damages. The contract declared on in the *third* count of the *narr.* was in the terms stated in an agreement between the parties *under seal*, and also in a written agreement signed by the defendant alone, which was not under seal; it alleging an agreement made between the parties on the 1st March, 1848, on the terms stated *in the sealed agreement*, viz., at a certain proportion of twenty-five cents per ton on the

[Spangler v. Springer.]

coal received and shipped; and alleging, as agreed upon in the second or *parol agreement*, that in case the said wages should, in any year, fall below $1500, then for the wages of $1500 per annum, &c. The *narr.* also contained common counts.

The pleas were *non assumpsit*, payment, and set-off, with leave &c.

On the trial the two agreements were offered in evidence on the part of the plaintiff. They were to the following effect:—

An agreement, *under seal*, dated 1st March, 1848, between Spangler and Springer, whereby Spangler agreed to employ Springer to conduct and manage the shipping of coal; and Springer agreed to give his undivided attention to the business. Spangler agreed to pay Springer a compensation for his services to be ascertained as stated, the same depending on the amount of coal received and shipped—the estimates of the business done and expenses incurred in conducting it, were to be made out on the first days of July, October, January, and April of each year, and the amount which should be due to Springer for his services, upon a calculation made, was to be paid or credited to him.

It was further agreed that the contract was to continue in force for three years from the date, "if both parties can agree so long." But (it was provided) it may be terminated by either party giving to the other reasonable notice of his intention so to do. The agreement was signed by both parties, and was *sealed*.

Subjoined to the agreement before referred to, was the following:

"Christian E. Spangler, the party of the first part, agrees, in case the amount coming to the said John B. Springer should fall short during any year below $1500, then the said Christian E. Spangler agrees to make up the deficiency at the end of the year."

This was signed by Christian E. Spangler alone, and was without date and was not under seal.

A witness testified that he saw the paper containing the two agreements executed. The sealed one was executed at the time it bears date; the second one sometime after the first. On his cross-examination he said the time of the execution of the second agreement was three or four weeks after the execution of the first one.

The paper containing both agreements was offered in evidence on part of the plaintiff. It was objected to for the reason, among others, that the first of the agreements was *under seal;* that the second agreement was without consideration and therefore void; —that the two agreements, taken together, did not support the action; that *the declaration* set out both agreements together as forming one entire and continuous agreement, made at one and the same time, and as a simple contract, and for one and the same consideration.

The paper was admitted, and exception was taken.

[Spangler *v.* Springer.]

Among certain items of moneys paid by defendant to plaintiff, for which the defendant claimed a credit, were three items which were objected to by plaintiff. They were charges against the plaintiff for advances by defendant to the plaintiff's father, and a sum charged to the plaintiff by the defendant to settle the father's account. The father was at the same time in defendant's employ in another branch of the same business. With regard to those disputed items, defendant called a witness, who testified as follows :—

"I know the parties; I was in defendant's employ in 1848, as book-keeper. The plaintiff and his father were both in defendant's employ at that time, in the coal business. These are the books of the coal business, containing the accounts of plaintiff and his father with defendant. There has been money paid to the plaintiff; the following items among others (which were objected to by plaintiff's counsel), viz.: December 13, 1848, cash $25; December 19, 1848, cash $50; December 18, 1848, charged to plaintiff to balance his father's account, $457.20. This was cash paid to the father, and a sum charged to the son to settle the father's account. There was an account *rendered to the plaintiff* up to January, 1849, making balance in our favor of $305 and some odd cents. The items with regard to the father, were in that account. The entry here in the book shows $457.20 charged to the son to settle the father's account. *There was an account furnished to father and son, and neither objected.* The accounts were furnished in February, 1849, and were brought up to January, 1850."

On cross-examination he said: The old man said the account was right; *the son said nothing about it;* the sums charged to the son have never been charged to the father; the entries have never been altered since they were put down as they are; these sums were allowed as credits to the father in his accounts at the arbitration, in the suit brought by the father against the present defendant, on a contract he had with the defendant in reference to this business. John B. Springer in this account was credited with ten months' wages, at the rate of $1500 per annum.

Re-examined: "Springer (the plaintiff) was about the office occasionally about the first of the year. The accounts were not altered before the arbitrators. John (the plaintiff) lived with his father."

There was no other testimony whatever, as to those items. The accounts referred to by the witness, were furnished before the plaintiff and defendant separated, and about a year before this suit was brought.

The defendant's counsel argued that as there were no disputed facts with regard to these accounts, they were *accounts stated,* conclusive in point of law, and that their correctness was a presumption of law which concluded the parties.

[Spangler *v.* Springer.]

The judge, however, left the question of their correctness to the jury as a presumption of fact, charging, as to them, as follows:—
"Among the sums for which the defendant claims a credit, there are three disputed items. It is a presumption of common sense that where an account is presented to a man, he would object if it were wrong. This principle is strengthened by lapse of time, and further strengthened when two accounts are coupled together as in this case. While the plaintiff remained in the service of the defendant, he did not object to the account, nor did he object before suit brought. If the plaintiff was aware that the items had been drawn from another account, it was his duty to object, or he would subject the defendant to a wrong. I therefore instruct you, that under the circumstances of this case, the account is strong evidence of the correctness of the items relied on by defendant.'

Verdict was rendered for the plaintiff for $475.

It was assigned for error: 1. That the Court erred in admitting in evidence the paper containing the agreement *under seal* and the one not under seal. 2. In submitting to the jury, as a question of fact to be passed upon by them, the legal presumption of correctness arising from the account stated.

*Sheppard*, for plaintiff in error.—It was contended that the parol agreement was not of such a nature as to deprive the sealed agreement of its character of a specialty, and reduce it to a simple contract and make it the foundation of an action *of assumpsit*. That the second was executed three or four weeks after the first, and was without consideration, and therefore void: 6 *W. & Ser.* 443, Ellmaker *v.* Franklin Insurance Company; *Chitty on Con.* 542.

But if there were a consideration for the additional agreement, it was contended that it was not of such a nature as to reduce the previous one to a parol contract: 11 *East* 548, White *v.* Perkins. It is merely collateral, and may furnish an independent cause of action. If, in respect of a *new* consideration, there has been a new simple contract, *assumpsit* may be maintained on the new contract, but not on the original one: 12 *East* 572; 9 *Pick.* 292.

It was further said that the contract was described in the *narr.* as entire and continuous, made at one and the same time, and for the same consideration. That it was not set out according to the facts, and there was, therefore, *a variance* between the allegations and the proof: 3 *Ser. & R.* 578, Jordan *v.* Cooper.

As to the second assignment, it was contended that the account submitted was *a stated account*, and that its correctness was a presumption of law and not of fact, a presumption conclusive on both

[Spangler *v.* Springer.]

parties, a "*presumptio juris de jure*:" 1 *Harris* 314, Thompson *v.* Fisher ; *Pulling on Mercantile Accounts*, 32–3, 57 *Law. Lib.*

*H. M. Phillips* and *R. C. McKinley*, for defendant in error.— The *third* count in the *narr.* was upon the contract as modified by the parol agreement, and to it the evidence conformed.   In support of the form of action adopted, reference was made to the case of Vicary *v.* Moore, 2 *Watts* 451; also to the opinion in Green *v.* Roberts, 5 *Wh.* 88, that where the alteration has not regard to the performance out of time of a precedent condition, but to the covenants on which breaches are assigned, such case admits not of election as to the remedy, but the whole has been turned into *parol*. In the present case the modification was not of the *plaintiff's* stipulations, but of the covenant of the *defendant*.   Also cited opinion of KENNEDY, J., in Vaughn *v.* Ferris, 2 *W. & Ser.* 46.

The *consideration* for the subsequent parol agreement was the performance of the services detailed in the *sealed* contract, and this appeared in the account of defendant furnished to the plaintiff, and by the books of Spangler, wherein the plaintiff was credited with the salary of $1500 per annum.

As to the variance alleged to exist, was cited Miller *v.* Miller, 4 *Barr* 317, where the Court say that the variance alleged was between the declaration and proof, as to which no specific direction was asked ; and having omitted to point it out, it cannot be assigned as error.   If it had been pointed out the declaration might have been *amended*.

As to the 2d assignment: It may be true that when an account becomes what is termed *a stated account*, its correctness may be *primâ facie* assumed; but still it is a question in every case whether an account offered is an account stated or not.   It is not settled what length of time is necessary to establish it as such. But it was further observed, that it seemed that the jury had considered the account as conclusive, and had given credit for it, the verdict having been for only $475, while the salary was $1500 per annum.   Where it appears by calculation that the jury did *not* allow credits of which incompetent evidence was given, the judgment will not be reversed on a bill of exceptions to such evidence: 1 *Pa. Rep.* 364; *Id.* 140; 5 *Harris* 520, Schmoyer *v.* Same.

The opinion of the Court was delivered by

WOODWARD, J.—The first assignment is, that the Court erred in admitting in evidence the paper containing the agreement under seal, and the additional agreement between plaintiff and defendant.

The action is founded on these two agreements, and is necessarily in *assumpsit*.   The third count in the plaintiff's *narr.* lays

[Spangler v. Springer.]

them both as the substantive ground of recovery, or rather, as together constituting the contract of hiring in pursuance of which the services were rendered.    As evidence, therefore, they were not irrelevant to the issue.    Had the parol modification of the covenant been in such of the *plaintiff's* stipulations as were mere conditions precedent to the action, he would have been bound to sue in covenant, on the principle of Jordan *v.* Cooper, 3 *Ser. & R.* 579, and could not have maintained the present action; but instead of this, it was a modification of the very covenant on which the defendant was called to respond, and as in Vicary *v.* Moore, 2 *Watts* 457, drew the retained stipulations of the sealed instrument into parol, and left the plaintiff no other remedy than an action of *assumpsit.*    In Vaughn *v.* Ferris the rule laid down in Vicary *v.* Moore was followed, and it was said a subsequent parol agreement cannot be tacked to a prior agreement under seal, between the same parties, so as to make the two agreements one entire agreement under seal; but a prior agreement under seal may be referred to by a subsequent parol agreement, and made part of it, so that both shall form but one entire parol agreement.    That is precisely what was done here; and in an appropriate action, brought upon both instruments as one entire parol agreement, both were competent evidence.

It has been suggested on the part of the plaintiff in error that the parol agreement was void for want of consideration; and a dictum of Chief Justice GIBSON, in Ellmaker *v.* The Franklin Insurance Company, 6 *W. & Ser.* 443, is cited in support of the position.    The parol agreement in that case was the agreement of the plaintiff in the action, and the point ruled was that it did not take away his action of covenant on the prior specialty, which is perfectly consistent with the distinction taken in Vicary *v.* Moore.    The remark that if it was executed subsequently, it would be without consideration, may have been appropriate enough to the facts before the Court, but must not be understood as the announcement of a general principle; for the case now before us shows most clearly that the terms and conditions of a sealed instrument may be such as to furnish a consideration for a subsequent alteration. According to the covenant between these parties, Springer's compensation was determinable by the amount of business which should happen to be done in the coal trade which he was to conduct for Spangler; and though it contemplated three years' service, there was an express stipulation that either party might terminate it by giving the other reasonable notice of his intention to do so.    Instead of so terminating it, and quitting an employment which he found was not likely to remunerate him, Springer remained in service on the faith of Spangler's parol agreement, made three or four weeks after the date of the sealed instrument, that if in any

[Spangler *v.* Springer.]

year the compensation should fall short of $1500, he would make up the deficiency at the end of the year. Forbearance to assert his right to cancel the original obligation, and continuance in service under the parol agreement, were abundant considerations to support it. That the services *were* rendered under and in pursuance of the parol agreement, is proved by the account rendered by the defendant, in which he credited the plaintiff, not according to the rate stipulated for in *the covenant*, but at the rate of $1500 per year. For these reasons, we think the plaintiff in error has failed to support his first assignment of error.

As to the alleged variance between the *allegata* and *probata*, it is sufficient to say, that no point was made in the Court below, where, if necessary, the plaintiff might have amended his *narr.*, and therefore no question of the kind can be entertained here.

Nor has he been more successful with the second assignment. The instructions of the Court as to the effect of the account rendered by the defendant were quite as favorable as he had any right to demand. It was not an account stated between the parties, but made up by one of them, and there was not a fact, except the retention of the account without objection, to justify the charges against the son, of moneys paid to his father, and of a gross sum to balance the father's account. The law requires very explicit evidence to charge one man with another's indebtedness, and there was no such in this case. Mere acquiescence in an account sent to a party was said in Killam *v.* Preston, 4 *W. & Ser.* 16, to be very slight evidence that it was correct. If there was error in what the Court said on this point, it was in favor of the complaining party.

The judgment is affirmed.